UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| **TRAVETTE TARA VASSER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:19-cv-00098 |
| | ) |
| **SHIROKI NORTH AMERICA, INC.** | ) |
| **CORPORATE HUMAN RESOURCES** | ) |
| **and SHIROKI NORTH AMERICA,** | ) |
| **INC. CORPORATE HEADQUARTERS,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Travette Tara Vasser, a Tennessee resident, filed a *pro se* employment discrimination Complaint under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and Tennessee law. (Doc. No. 1.) Vasser also filed an application to proceed in this Court without prepaying fees and costs that the Court initially denied (Doc. Nos. 3, 4), but later granted upon reconsideration (Doc. Nos. 6, 7). The Complaint is now before the Court for initial review.

I.  Initial Review of the Complaint

The Court must conduct an initial review of the Complaint and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see also McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997) (holding the screening procedure established by § 1915(e) also applies to *in forma pauperis* complaints filed by non-prisoners), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007).

A.      Standard of Review

In reviewing the Complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)), that rises "above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court does not accept "legal conclusions masquerading as factual allegations," Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007), or make "unwarranted factual inferences." DirectTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383; Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004); Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

B.    Factual Allegations[1]

Liberally construing the Complaint and drawing the necessary reasonable inferences, it appears that around January 2, 2018, Shiroki North America, Inc. ("Shiroki") hired Vasser, a 49 year-old African-American woman, as a Quality Engineer. Vasser's problems with Shiroki began in July-August of 2018, with an incident in which Senior Quality Manager Ann Gregory responded to a customer concerning a "countermeasure quality issue." The customer rejected Shiroki's countermeasure and criticized Gregory's response. Gregory then yelled at Vasser and attempted to blame her. Vasser reported the incident to Shiroki's human resources department in Gordonsville, which immediately involved Shiroki's corporate human resources department, including employees Holly Wood and Chad Emery.

On September 16, 2018, Vasser was injured and went for emergency treatment at both St. Thomas and Vanderbilt. She also received follow-up care from her primary care physician, who provided Shiroki medical work excuses for September 17-19, 2018, with a return date for Vasser of September 20, 2018. Vasser returned to work on September 20 on crutches, pending an appointment with Vanderbilt orthopedist Dr. Gene Hannah. However, Holly Wood told Vasser that she could not work on crutches and directed her to go home. Wood further informed Vasser that although she did not have enough time at Shiroki for leave under the Family and Medical Leave Act, because Vasser was a salaried employee she would qualify for a salary continuation

---

[1] The Complaint does not include an independent recitation of facts, but rather incorporates by reference five exhibits: her EEOC Charge of Discrimination; a Certification from Health Care Provider for Medical Leave dated October 2, 2018; two letters dated September 28, 2018, and October 29, 2018, from Defendant Shiroki North America, Inc.; and a text message exchange between Vasser and "Holly-Shiroki" dated September 13, 2018 (Doc. Nos. 1-1, 1-2). Because Vasser is proceeding *pro se*, the Court has liberally derived the alleged facts from these exhibits.

benefit and not be fired. Vasser used all of her remaining personal and vacation time in order to trigger the salary continuation benefit.

On September 27, 2018, Vasser provided Shiroki with a letter from Dr. Hannah that indicated Vasser was restricted from returning to work "until further notice." (Id. at 3.) On September 28, Vasser received a letter from Shiroki Corporate Benefits Senior Manager Wendy Tyrell. Tyrrell noted that Vasser had "last worked on September 14, 2018, and ha[d] been out of work since then due to a personal illness and/or injury." (Doc. No. 1-2 at 1.) She described Dr. Hannah's note as an excuse from work "with no indication of any projected date of return or accommodation that would allow you to return to work." (Id.) Tyrell advised Vasser:

> As we discussed via phone recently, you are not eligible for leave under the Family Medical Leave Act (FMLA) because you have not yet worked at [Shiroki] for the required number of months/or hours. Additionally, you have already exhausted all of your vacation and sick days. . . .
>
> Unfortunately, . . . given the critical nature of your position, [Shiroki] is unable to hold your position open for the indefinite and prolonged period during which Dr. Hannah has indicated you will be unable to return work. If you have any additional information or ideas you would like us to consider that might allow you to return to work, please reach out to me by Friday, October 5. Otherwise, we will be administratively terminating your employment at that time.
>
> On behalf of [Shiroki], I want to thank you for your service and wish you well on your anticipated recovery. . . .

(Id.; Doc. No. 1-1 at 3.) Tyrell also informed Vasser that "as a salaried exempt team member, [she was] eligible for 26 weeks of disability benefits under [Shiroki's] Corporate policy." (Doc. No. 1-2 at 1.) Following 26 weeks of disability benefits, Shiroki would terminate Vasser's group medical coverage but give her the opportunity to continue under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Vasser was "shocked, upset, and disturbed," by this letter, and she informed Tyrell and other members of the Shiroki management team by email that they "were violating [her] ADA rights and [she] would be contacting the EEOC." (Doc. No. 1-1 at 4.)

4

Nevertheless, it appears that Vasser provided additional medical documentation to Tyrrell on October 3, 2018, indicating that, due to a "left knee sprain" and "left knee bone bruise," she was unable to return to work until October 29. (Doc. No. 1-2 at 3.) In response, Shiroki granted Vasser continued leave up to October 29. However, Shiroki advised Vasser that, "given the critical nature of [her] position, [Shiroki] was unable to hold [her] position open for an indefinite or prolonged period and could not extend [her] leave beyond October 29." (Doc. No. 1-2 at 2.) Shiroki again encouraged Vasser to share any ideas she might have that would allow her to return to work.

On October 28, 2018, Vasser again provided updated documentation to Shiroki in the form of a note from Dr. Hannah that indicated that Vasser "remained unable to return to work" and would be rechecked on November 8. (Id.) One day later, on October 29, Shiroki sent Vasser a letter terminating her employment. In this letter, Tyrrell stated:

> Unfortunately, Dr. Hannah has now indicated that you remain unable to return to work for an indefinite period. Additionally, we are not aware of any open position or other accommodation that would allow you to return work, and you have not informed us of any ideas that you believe would allow you to return. Accordingly, we are administratively terminating your employment effective today, October 29, 2018.

(Id.; Doc. No. 1-1 at 4.) Tyrell also reiterated Vasser's ongoing eligibility for disability benefits and continuation of health benefits under COBRA. Vasser believes that Shiroki terminated her on October 29 despite knowing that she was scheduled for a reevaluation by her doctor on November 8 and might be cleared to return to work. Indeed, on November 9, Dr. Hannah cleared Vasser to return to work with the restriction of sitting until further notice.

Vasser alleges that after the initial workplace dispute with Ann Gregory, she was disrespected, retaliated against, harassed, and subjected to a hostile working environment by Shiroki's Gordonsville and corporate human resources personnel, Shiroki's Gordonsville Plant Manager Gina Haley, Shiroki corporate representative Ricky Baines, Gregory, and other staff. This

5

specifically included monthly meetings that were held "with fault and accusatory tone." (Doc. No. 1-1 at 2-3.) Vasser further alleges that she was discriminated against because of her race, age, and disability, and retaliated against for complaining about those illegal actions. In regards to retaliation, Vasser specifically complained in a text message to Shiroki's Holly Wood about being unfairly scrutinized and "treated like an hourly employee"; blamed for things that were not her fault; accused of being "mad" – which Vasser believed to be "a racial statement for . . . 'angry. . . black woman'"; and falsely accused of threatening human resources. (See Doc. No. 1-2 at 7.)

    C.    Discussion

        1.    Federal Discrimination Claims

Vasser alleges several types of employment discrimination. On her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), she checked the boxes that she intends to bring this action under Title VII, the ADEA, and the ADA.[2] (Doc. No. 1 at 3.) The "discriminatory conduct of which [she] complain[s]" is termination of employment, failure to accommodate disability, unequal terms and conditions of employment, and retaliation. (Id. at 4.) Vasser claims that she has been discriminated against based upon race, age, and disability (specifically, her "musculoskeletal disorders"). (Id.) Before reviewing the merits of Vasser's claims, the Court first addresses the timeliness of the complaint.

            a.    Timeliness

A plaintiff must file a federal employment discrimination lawsuit within 90 days of receiving the right-to-sue notice from the EEOC demonstrating the exhaustion of administrative remedies. See Fuller v. Mich. Dep't of Transp., 580 F. App'x 416, 424 (6th Cir. 2014) (citing 42

---

[2] Vasser also indicates that she brings a claim under a separate federal law of "retaliation." (Doc. No. 1 at 3.) However, as discussed below, Vasser's retaliation claims fall under Title VII, the ADEA, and the ADA.

6

Case 2:19-cv-00098 Document 8 Filed 04/17/20 Page 6 of 15 PageID #: 47

U.S.C. § 2000e-5(f)(1)) (Title VII claims); Setzer v. First Choice Lending Servs., LLC, No. 18-5192, 2018 WL 75004772, at *3 (6th Cir. Sept. 10, 2018) (citing 9 U.S.C. § 626(e)) (ADEA claims); McGhee v. Disney Store, 53 F. App'x 751, 752 (6th Cir. 2014) (citing 42 U.S.C. § 12117(a)) (ADA claims). There is a presumption that a plaintiff "receives the EEOC's [right-to-sue] letter by the fifth day after the indicated mailing date." Fuller, 580 F. App'x at 424 (citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 557 (6th Cir. 2000)). Vasser has satisfied the administrative exhaustion requirement by submitting the right-to-sue letter that she received from the EEOC. (See Doc. No. 1-1 at 1.) The right-to-sue letter is dated September 16, 2019, so the Court presumes Vasser received it on September 21, 2019. (Id.) The Court received the Complaint on December 13, 2019, 83 days later. (Doc. No. 1 at 1.) Accordingly, the Court considers Vasser's Title VII, ADEA, and ADA claims to be timely for the purpose of initial review.

    b.  <u>Proper Defendant</u>

Another threshold matter is the proper defendant in this case. Vasser has specified two Defendants – Shiroki North America, Inc. "Corporate Human Resources" and Shiroki North America, Inc. "Corporate Headquarters." However, it is clear from the Complaint that Vasser intends to bring this action against her former employer, Shiroki North America, Inc., which is the proper defendant for Vasser's federal civil rights claims. Indeed, Shiroki's "corporate headquarters" is just a building and "human resources" is a corporate department; these are qualifications of no import under the federal civil rights laws. Accordingly, for purposes of this initial review, the Court liberally construes Vasser's claims to be against Shiroki North America, Inc. as sole defendant. The Clerk will be directed to modify the caption of this matter accordingly. The Court now considers the merits of these claims.

7

###### c. Substantive Pleading Standards

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). For a Title VII discrimination claim on the basis of race, Vasser must plausibly allege that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). Discrimination under Title VII includes maintaining a hostile work environment, which exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). For such a claim, Vasser must plausibly allege that: (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action. Phillips v. UAW Int'l, 854 F.3d 323, 327 (6th Cir. 2017) (citing Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1078-79 (6th Cir. 1999)).

Next, the ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). For an ADEA discrimination claim on the basis of age, Vasser must plausibly allege that (1) she is a member of the protected class, that is, she is at least forty years of age; (2) she was subjected to an

adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated employees outside the protected class. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004).

Finally, the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). For a claim of disability discrimination, Vasser must plausibly allege that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) Shiroki knew or had reason to know of her disability; and (5) her position remained open while Shiroki sought other applicants or replaced her. Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 320 (6th Cir. 2019); Ferrari v. Ford Motor Co., 826 F.3d 885, 891-92 (6th Cir. 2016). Discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." Brumley v. United Parcel Serv., Inc., 900 F.3d 834, 839 (6th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). For a failure-to-accommodate claim, Vasser must plausibly allege that: (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) Shiroki knew or had reason to know about her disability; (4) she requested an accommodation; and (5) Shiroki failed to provide the necessary accommodation. Id. (citing Deister v. Auto Club Ins. Ass'n, 647 F. App'x 652, 657 (6th Cir. 2016); Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982-83 (6th Cir. 2011)).

9

Importantly, however, Vasser need not establish all elements of the *prima facie* case of these federal employment discrimination claims at this stage, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002), and on initial review the Court does not require more than a short and plain statement of these claims. See Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012) (so long as the Complaint "provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)); Primm v. Dept. of Human Servs., No. 16-6837, 2017 WL 10646487, at *2 (6th Cir. Aug. 17, 2017) (courts should not impose a heightened pleading standard of specific facts to support *prima facie* Title VII case); Smith v. Wrigley Mfg. Co. LLC, 749 F. App'x 446, 448 (6th Cir. 2018) (an ADEA plaintiff does not have to establish every aspect of a *prima facie* case at this stage); Wallace v. Edward W. Sparrow Hosp. Ass'n, 782 F. App'x 395, 404 (6th Cir. 2019) (an ADA plaintiff's pleading burden is not onerous at this stage and every element of the *prima facie* case need not be established as long as the complaint alleges that the plaintiff was disabled or regarded as disabled and otherwise qualified for his position).

d. Analysis

Construing the Complaint most liberally, as is required, the Court finds that Vasser has stated federal employment discrimination claims sufficient to withstand initial review. The Complaint, based primarily upon Vasser's EEOC Charge of Discrimination, broadly alleges that Vasser is 49; is African-American; Shiroki singled Vasser out and discriminated against her based upon age and race, including refusing to allow Vasser to work on crutches, subjecting her to a hostile work environment, and eventually terminating her. (Doc. Nos. 1; 1-1 at 2-5.) Concerning disability, the Complaint alleges that Vasser was disabled; she was, at least impliedly, otherwise qualified for her position; she promptly brought her medical condition to the attention of Shiroki

and timely provided doctor's notes; Shiroki failed to accommodate Vasser's disability; and Shiroki terminated Vasser in lieu of medical leave. These allegations are supported by the exhibits to the Complaint, including correspondence from Shiroki and a detailed text exchange with Holly Wood of Shiroki. (See Doc. No. 1-2.) Shiroki was previously put on notice of Vasser's claims when, represented by counsel, it participated in the EEOC investigation. (See Doc. No. 1-1 at 1.) Now before this Court, the Complaint and exhibits together contain sufficient factual matter to again put Shiroki on notice of Vasser's Title VII discrimination and hostile work environment claims, ADEA discrimination claim, and ADA discrimination and failure-to-accommodate claims. While questions exist regarding whether Vasser can ultimately meet her *prima facie* burden, these are for resolution at a later time. At this early stage, Vasser has done enough to give Shiroki "fair notice of [her] claim[s] and the grounds upon which [they] rest[ ]." Morgan v. St. Francis Hosp., No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019) (citations omitted). Accordingly, Vasser's federal employment discrimination claims will be allowed to proceed.

        2.        Federal Retaliation Claims

Liberally construing the Complaint, Vasser also alleges retaliation under Title VII, the ADEA, and the ADA. The Court considers these claims together.

Title VII makes it unlawful to retaliate against employees for engaging in protected conduct – that is, opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). The ADEA similarly prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). Likewise, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a

11

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a retaliation claim, Vasser must plausibly allege that: (1) she engaged in protected conduct under Title VII, the ADEA, or the ADA; (2) Shiroki had knowledge of the protected activity; (3) Shiroki thereafter took an employment action adverse to Vasser; and (4) there was a causal connection between the protected activity and the adverse employment action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013) (Title VII); Blizzard v. Marion Tech. Coll., 698 F.3d 275, 288 (6th Cir. 2012) (citing Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008)) (ADEA); Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)) (ADA).

Vasser alleges Shiroki retaliated against her in several ways, including termination, both (1) in response to Vasser reporting unfair treatment by her superior to human resources, and (2) formally informing Shiroki personnel that they "were violating [her] ADA rights and [she] would be contacting the EEOC." (Doc. No. 1-1 at 4.) Liberally construing Vasser's first report to human resources together with her allegations of race and age discrimination, the Court infers for purposes of initial review that this activity was protected conduct under Title VII and the ADEA. 28 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Vasser's second complaint formally invoked the ADA and thus encompasses alleged disability discrimination; it is therefore protected conduct under the ADA. 42 U.S.C. § 12203(a). At this early juncture, the Court finds that Vasser's retaliation claims may proceed.

### 3. State Law Claim

Vasser asserts a state law claim for "interference in medical care." (Doc. No. 1 at 3.) However, she does not invoke a particular body of state law. While it is generally not the role of

12

the Court to construct an ill-defined legal theory, Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011), taking Vasser's allegations as a whole, the Court finds it likely that Vasser inartfully articulated a claim of intentional infliction of emotional distress. (See Doc. No. 1 at 5 (alleging Shiroki's "outrageous conduct" in response to Vasser's doctor's notes)).

A claim for intentional infliction of emotional distress – also referred to in Tennessee as the tort of "outrageous conduct" – has three elements: (1) "the conduct complained of must be intentional or reckless, (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of results in serious mental injury." DeSoto v. Bd. of Parks and Recreation, 64 F. Supp. 3d 1070, 1095 (M.D. Tenn. 2014) (quoting Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997)). Regarding "outrageous conduct," Tennessee has adopted a "high threshold standard." Bain, 936 S.W.2d 618, 622 (1997). The conduct must be "atrocious," "utterly intolerable," and "beyond all bounds of decency." Z.J. v. Vanderbilt Univ., 355 F.Supp.3d 646, 685 (M.D. Tenn. 2018) (quoting Goldfarb v. Baker, 547 S.W.2d 567, 569 (Tenn. 1977)). As the Tennessee Supreme Court has explained:

> In describing these elements, we have emphasized that it is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004) (internal citations and quotation marks omitted).

Here, Vasser does not allege that Shiroki limited her access to health care during her employment. Thus, any IIED claim based on interference with medical care necessarily arises from Vasser's allegedly discriminatory termination despite presenting medical excuses. That is, that by terminating Vasser Shiroki deliberately caused a "loss of health benefits" that contributed to a

13

worsening of Vasser's medical conditions. (See Doc. No. 1 at 5.) Such a claim may not proceed, for two reasons. First, Vasser has not alleged a "serious mental injury"; indeed, the Complaint contains no claim of mental distress at all. While the termination was undoubtedly distressing to Vasser, she has not alleged that she was "unable to adequately cope with the mental stress" of this employment dispute, or that an ordinary personal would not have been so able. Rogers v. Louisville Land Co., 367 S.W.3d 196, 210 (Tenn. 2012) (serious mental injury "occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case"). Second, Vasser's alleged termination does not meet the exceedingly high bar for "exceptional circumstances" constituting "outrageous conduct" set by the Tennessee courts. See DeSoto, 64 F. Supp. 3d. at 1095-96 (explaining that "[c]ases in which IIED claims were viable have involved truly shocking conduct" and that "trial courts should be wary of permitting IIED claims to move forward in employment discrimination cases, absent exceptional allegations"); see also Godfredson v. Hess & Clark Inc., 173 F.3d 365, 376 (6th Cir. 1999) ("An employee's termination, even if based on discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more. If such were not true, then every discrimination would simultaneously become a cause of action for the intentional infliction of emotional distress."). Accordingly, Vasser's IIED claim must be dismissed.

II.     Conclusion

For the reasons explained above, the Court concludes that Vasser has stated non-frivolous Title VII discrimination, hostile work environment claims and retaliation claims, ADEA discrimination and retaliation claims, and ADA discrimination, failure-to-accommodate, and

retaliation claims. These claims shall all proceed. Vasser's state law claim will be dismissed.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE